[Civ. No. 5288. First Appellate District, Division One.—March 23, 1927.]

## LLEWELLYN A. BANKS, etc., Respondent, v. W. P. PANN, Defendant; ANGELES BROKERAGE COMPANY (a Corporation), Appellant.

[1] SALES — REFUSAL OF BUYER TO ACCEPT ORANGES — ACTION FOR DAMAGES — QUALITY OF FRUIT — FINDINGS—EVIDENCE—APPEAL.— In an action by a seller under a contract for the sale of oranges against the buyer for damages growing out of the refusal on the part of the buyer to take and pay for the fruit, the findings of the trial court that the fruit tendered by the seller to the buyer was of quality and grade sufficient to meet the requirements of the contract will not be disturbed on appeal, where such finding is supported by substantial evidence, although the evidence is conflicting.

[2] ID. — REFUSAL BY BUYER TO PERFORM — TITLE TO GOODS IN SELLER —ABSENCE OF RESALE—MEASURE OF DAMAGES.—In ordinary cases when the buyer refuses to proceed with performance, and when the title has not passed and the property has not been resold pursuant to section 3049 of the Civil Code, the measure of damages is the excess of the amount due from the buyer under the contract over the value to the seller, together with the excess expense of marketing; and the term "value to seller" is construed as meaning market price or market value.

[3] ID.—MEASURE OF DAMAGES—SECTION 3311, CIVIL CODE—EVIDENCE. In such action, where there was no resale of the goods pursuant to section 3049 of the Civil Code, and title remained in plaintiff, but plaintiff, after defendant's refusal to accept the goods, used the same in filling other orders which he had procured before the breach (although plaintiff had procured fruit sufficient to fill all of such other orders), and received a price which was higher than the market price at the time of defendant's breach, section 3311 of the Civil Code was applicable as determining the measure of damage and plaintiff was, therefore, entitled to recover the difference between the contract price and the market value at the time of breach.

[4] ID.—QUALITY OF FRUIT—EVIDENCE.—In such action, the trial court did not err in permitting a witness, who was connected with a

---

1. See 2 Cal. Jur. 921; 2 R. C. L. 194.

2. Measure of damages against vendee for refusing to perform his contract to purchase, note, 67 Am. Dec. 275. See, also, 22 Cal. Jur. 1062, 1069; 24 R. C. L. 116.

4. See 27 Cal. Jur. 33.

firm to which the oranges refused by defendant were shipped, to testify that the car in question measured up to the brands and that the brands indicated a certain quality, where the witness showed a familiarity with the grades named and handled the car in question, and his firm had been familiar for years with those brands and quality, and received and handled the car in question in the regular course of business.

[5] ID. — QUALIFICATIONS OF EXPERT — EVIDENCE — APPEAL. — In such action, error in admitting the testimony of an office manager of a firm, which had been doing business with plaintiff for a number of years, as to the quality and brand of the fruit in question, because the foundation of his opinion was not sufficiently laid, was not of such a serious nature as to compel a new trial even in the face of the sharp conflict in the evidence.

(1) 4 **C. J.**, p. 884, n. 37.   (2) 35 **Cyc.**, p. 592, n. 53.   (3) 35 **Cyc.**, p. 597, n. 89.   (4) 22 **C. J.**, p. 567, n. 49; 35 **Cyc.**, p. 590, n. 24. (5) 4 **C. J.**, p. 997, n. 85.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Walton J. Wood, Judge.   Affirmed.

The facts are stated in the opinion of the court.

G. P. Adams and W. W. Orme for Appellant.

L. M. Chapman and Ward Chapman for Respondent.

PARKER, J., *pro tem.*—Defendant Angeles Brokerage Company, a corporation, appeals from a judgment against it and brings here for review the judgment and the order of the lower court denying its motion for a new trial.

This is a suit by the seller in a contract of sale of citrus fruit against the buyer for damages growing out of the refusal on the part of the buyer to take and pay for the fruit. The trial court found in favor of plaintiff and against defendant corporation, and assessed damages in the sum of $1,945.05, and thereafter defendant corporation presented its motion for a new trial on all of the statutory grounds, and said motion was denied.

It might be here noted that no judgment was given against defendant Pann.

It is admitted (and is indeed the basis of the action) that in March of 1919 plaintiff agreed to sell and defendant

agreed to purchase ten carloads of San Fernando Valencia oranges of specified grades and sizes. As a particular specification the fruit sold on the contract was to be free from frost. It is further admitted that in pursuance of the contract plaintiff did tender to defendant certain cars of fruit and that defendant refused to accept the same.

[1] On the determination of breach of contract but one question is presented, namely, Was the fruit tendered of quality and grade sufficient to meet the requirements of the contract?

Passing questions that incidentally arise, both plaintiff and defendant agree that if the fruit tendered was thus sufficient in grade and quality the refusal of defendant to accept constituted an actionable breach of the contract.

Plaintiff presented evidence that the fruit tendered met in all respects the requirements of his obligation, and that it was delivered at a time and place conformable to the contract and to the orders of defendant. Defendant, on the other hand, offered evidence to the contrary, tending to show that in no manner, either as to grade or sizes or freedom from frost, did the fruit measure up to the contracted specifications.

On this issue the trial court found in favor of the plaintiff.

Appellant argues, somewhat convincingly, that this finding is against the evidence, and lacks facts sufficient to sustain it.

After a careful analysis of the evidence we feel that the record presents a sharp conflict and that the findings of the trial court on the fact of breach of contract should not be disturbed. The conflict of evidence is indeed sharp, and it presents a case, where, had the trial court determined the fact in favor of defendant, there would have been abundant foundation for the finding. This, however, does not justify any interference by this court, much less demand it. It would seriously disturb our entire judicial system if appellate courts were to become triers of fact and attempt to make nice distinctions as to credibility of witnesses and the weight of testimony. It needs no authority to support the rule that this court will not disturb a finding of fact by the trial court where there is substantial evidence to support it. A recent example is the case of *Johnston* v. *Field,* decided

by the supreme court in bank March 10, 1927, 200 Cal. 644 [254 Pac. 269].

The next question, however, is not so easily disposed of. Appellant contends that even if it did breach the contract the trial court's finding as to damage is not supported by the facts and that the method of assessing the damage to plaintiff was erroneous.

Here it becomes necessary to briefly outline the facts forming the basis of the trial court's conclusion.

Plaintiff is engaged in the business of packing and shipping oranges. The record discloses that in March of 1919 he had secured orders for cars of fruit to be shipped to eastern points, and the prices to be obtained therefor were as of the March market. From March or thereabouts the market began to weaken, which tendency continued until in August of the same year the market price of oranges had declined at least one dollar a box. The plaintiff had procured fruit sufficient to fill all of his orders, including the order on the contract here involved. When the oranges were tendered to appellant and by it refused, without reason (as herein determined), the respondent diverted the fruit to fill one of these previous orders, receiving therefor the contract price, which was greatly in excess of the then market value or market price. Appellant strenuously urges that the measure of his liability should be the difference between the price actually received on these shipments as made and the price which appellant had agreed to pay. Respondent, in turn, as strenuously argues that the measure of his damage is the difference between the contract price and the market value at the time of breach.

[2] It is conceded, as indeed it must be, that in ordinary cases when the buyer refuses to proceed with performance, and when the title has not passed and the property has not been resold pursuant to section 3049 of the Civil Code, the measure of damages is the excess of the amount due from buyer under the contract over the value to the seller, together with excess expense of marketing. (Sec. 3311, Civ. Code.)

The term "value to seller" is construed as meaning market price or market value. (*Hill* v. *McKay,* 94 Cal. 18 [29 Pac. 406, 409].)

[3]   It is further conceded in this case that title remained in the seller.

A mere reading of the facts as hereinbefore detailed will suffice to indicate that there was no resale of the goods pursuant to section 3049. Whatever may be contended with reference to the general rule that one is bound to use all reasonable means at hand to minimize his damage, it is rarely applied in cases of this sort where the measure of damages is provided by statute. Here the seller's damage was determined at the time of breach. The mere fact that he was able to exchange the fruit and ship the same in place and stead of other fruit at a price contracted for months before and at a then more advantageous market does not inure to the benefit of defendant. As far as defendant is concerned, what difference can it make to him whether the damages are predicated upon any particular car of oranges in the absence of a showing of a market affected by the difference? We are dealing here with goods of a perishable nature, and the record discloses that respondent had ample fruit other than that tendered appellant to fill all of its orders. To accept appellant's theory would be to hold that the respondent packing company should have taken the fruit offered, and at the risk of deterioration and loss sought a market and held back the other fruit belonging to it, and eventually end up with a surplus on hand undisposed of and a cause of action against no one for the loss occasioned by appellant's breach. We are of the opinion that the trial court properly accepted section 3311 as determining the measure of damage and properly applied said section to the facts before it. See, also, *Gopcevic* v. *California Packing Co.*, 64 Cal. App. 132 [220 Pac. 1078].

Appellant further presents as ground of appeal the alleged error of the trial court in denying its motion for a new trial.

Aside from urging the grounds hereinbefore disposed of appellant cites certain errors in the admission of testimony.

[4]   Respondent, on the question of the quality of the fruit, presented, in the form of depositions, the testimony of two witnesses. The first witness whose deposition was read was one William C. Edwards, a resident of New Jersey. He testified: "I am president of W. T. Mullikin Co., a corporation, of Philadelphia. That I purchased oranges from re-

spondent. I know of a car shipped said corporation in September, 1919. We handled that car. We bought the car.'' He was then asked to state the brand and grade under which said oranges were packed; whereupon appellant objected on the ground that no foundation had been laid and on the grounds of irrelevancy, incompetency, and immateriality, which objection was overruled. Witness was then asked if the quality was up to the brand and grade. The same objection was interposed with the same ruling. However, before ruling, evidence was offered by another witness to show that the firm of Mullikin & Co. had purchased hundreds of cars of oranges from respondent in the six years preceding, almost always shipped under same brands.

Appellant urges the further objection that the testimony of the witness that he was president of the corporation at the time of deposition did not indicate that he had any connection with the company prior to the time of deposition.

We see no serious error in the ruling of the trial court. The witness showed a familiarity with the grades named and handled the car in question. The effect of his testimony was that the car in question measured up to the brands and that the brands indicated a certain quality. It was apparent from the record that the firm had been familiar for years with these brands and quality, and received and handled the car in question in the regular course of business.

[5] The next witness was one named F. F. Buckmaster. He was office manager of John Amecin Bros. & Co. of Columbus, Ohio. John Amecin Bros. Co. bought several carloads of oranges from the respondent. This witness was called upon to testify as to the grade and quality of some of the cars in dispute. The appellant objected on the ground that no foundation was laid showing the qualifications of the witness, and particularly in view of no showing that he had ever seen the fruit. Here it was shown that Amecin Bros. Co. had been customers of respondent for twelve years. The court permitted the witness to testify over the objections of appellant as to the grades and brand of the fruit, and also that the fruit was of a quality up to the grade indicated by the brand and was free from frost.

The witness testified with reference to each car that he *knew* *of* that particular car. Appellant claims that this indicated only that he might have heard of the car and

never had any connection therewith. We are satisfied, however, that he was understood to mean that he knew the car referred to in the course of his business. Just what might have been his duties as office manager should have been more clearly set forth. It is probable that an office manager might be, and usually is, removed entirely from the actual handling of the fruit or other goods sold. However, it is easy of presumption that his duties involved the general business of his firm and that he would be intimate with their business affairs. He would presumptively know if fruit was handled by his firm under certain brands or grades and as of a certain quality and whether or not difficulty had been encountered.

However, conceding that the foundation for his opinion was not sufficiently laid we do not deem the error in the instant case of such a serious nature as to compel a new trial even in the face of the sharp conflict in the evidence. Moreover, the witness did qualify to a certain extent by showing that his business was a wholesaler of fruits and produce. That naturally would give him some knowledge of the subject of his testimony. The case was tried without a jury, and the testimony objected to came in by deposition. The record does not disclose in what manner the depositions were taken, but in the briefs of counsel it seems to be conceded that they were taken upon interrogatories submitted to the adverse party. While it may be true that, as in this case, the adverse party is under no legal obligation to cross-interrogate to determine the competency of a witness or to cross-interrogate at all, nevertheless we come back to the main function of counsel, namely, to aid and enlighten the court. Incidentally, in reviewing an appellant's claim of wrong we look at the wrong done him as well as a contended deviation from rule.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 19, 1927.